No. 98-402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 21

SHAMROCK MOTORS, INC.,

Petitioner and Respondent,

v.

FORD MOTOR COMPANY,

Respondent and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert M. Carlson; Corette, Pohlman & Kebe, Butte, Montana

George E. Feldmiller; Berkowitz, Feldmiller, Stanton, Brandt,

Williams & Stueve, Kansas City, Missouri

For Respondent:

James T. Harrison, Jr.; Harrison, Loendorf, Poston & Duncan,

Helena, Montana

Submitted on Briefs: December 30, 1998

Decided: February 11, 1999

Filed:

No

_____

Clerk


Justice W. William Leaphart delivered the Opinion of the Court.


**¶1. This is an appeal from the District Court's reversal of a decision by the Motor Vehicle Division of the Montana Department of Justice (Motor Vehicle Division) ruling that Appellant Ford Motor Company (Ford) had good cause to terminate the automobile dealer franchise of Shamrock Motors, Inc. (Shamrock). Ford's notice of intent to terminate the dealership was based upon Shamrock's unauthorized sale of 80% of its stock without Ford's knowledge or consent, which was in violation of the Ford Sales and Service Agreement (FSSA). The Motor Vehicle Division issued a decision holding that "Ford Motor Company has carried its burden of proof under Montana law to establish that good cause exists to terminate its franchise with Shamrock Motors, Inc., under the standards established in Mont. Code Ann. § 61-4-205 to 61-4-207."**

**¶2. Shamrock appealed the Motor Vehicle Division's decision by filing a petition for judicial review with the Montana Second Judicial District Court, Silver Bow County. Based on diversity of citizenship, Ford removed the case to the United States District Court. The United States District Court reversed the Motor Vehicle Division's decision, and Ford appealed to the Ninth Circuit Court of Appeals.**

**¶3. While the matter was pending before the Ninth Circuit, Shamrock, in January of 1997, sold the dealership to Brooks Hanna Ford, Inc. (Brooks Hanna), and resigned as a Ford dealer. Ford executed a new FSSA with Brooks Hanna, the new Ford dealer. The Ninth Circuit then vacated the United States District Court's decision on the ground that the court lacked jurisdiction, and remanded the case back to state court. In February, 1998, Shamrock filed a second petition for judicial review. In response, Ford filed a motion to dismiss based on mootness and lack of standing, relying on Shamrock's sale of the dealership and the fact that Shamrock was no longer a Ford dealer.**

¶4. The District Court found in favor of Shamrock and, without discussion, denied Ford's motion to dismiss. Relying on § 61-4-207(2)(a), MCA, the District Court concluded the franchise could not be terminated as the result of a sale of 80% of the franchisee's stock. It is from that decision that Ford appeals.

## Issues Presented for Review

¶5. 1. Whether the District Court erred by failing to grant Ford's motion to dismiss Shamrock's petition for judicial review on the grounds of mootness or lack of standing once Shamrock had sold its franchise.

¶6. 2. Whether the District Court erred in holding that Shamrock's change in ownership, undertaken without knowledge or consent of Ford, could not, as a matter of law, be good cause for termination of the franchise.

## Factual Background

¶7. In November, 1985, Ford and Shamrock entered into an FSSA which established Shamrock as an authorized Ford dealer in Butte, Montana. The FSSA stated that Shamrock was owned by Patrick Lyons (Lyons) and Charles Canty (Canty), and provided that Lyons would "have full managerial authority" on behalf the Shamrock dealership.

¶8. The FSSA provided that Shamrock had to obtain Ford's approval of any change in ownership or managerial authority. The FSSA required that Shamrock "give [Ford] prior notice of any proposed change in the said ownership or managerial authority." Further, it stated that Ford "has the right to approve or decline to approve any prospective purchaser as to his character, automotive experience, management, capital and other qualifications . . . as an authorized dealer." The FSSA went on to provide that if Shamrock failed to obtain Ford's "prior written consent" to a "direct or indirect [change in] ownership or operating management," it would be "so contrary to the intent and purpose of this agreement as to warrant its termination or nonrenewal."

¶9. On May 11, 1993, Ford was informed for the first time that Lyons and Canty had sold 80% of Shamrock's stock to Merle Rhoades (Rhoades). This sale had been undertaken without prior notice to Ford and without Ford's prior written consent.

Ford learned of the sale at a meeting to discuss Shamrock's participation in a Ford dealer development program. Upon learning of the sale, Ford's representative told Lyons that the sale was a breach of the FSSA. Rhoades, the new owner of Shamrock, took the position that Montana law made the provisions of the FSSA relating to a change in ownership unenforceable. On September 29, 1993, Ford sent a notice of its intention to terminate Shamrock's franchise to the Montana Department of Justice Title and Registration Bureau.

¶10. Shamrock exercised its right to both an internal and administrative review of Ford's decision to terminate the franchise. Shamrock's initial challenge of the termination decision was reviewed and dismissed by Ford's internal Dealer Policy Board in February, 1994. Shamrock's administrative appeal to the Motor Vehicle Division was concluded in June, 1994, when the Division issued an order upholding Ford's termination decision and finding that Ford had established good cause for termination.

¶11. Shamrock appealed the administrative decision by filing a petition for judicial review with the Montana Second Judicial District Court. After removal to federal court, the Ninth Circuit held that the Federal District Court lacked jurisdiction to reverse the administrative decision by the Motor Vehicle Division and the matter was remanded back to the Montana state court for appellate review. Shamrock Motors, Inc. v. Ford Motor Co. (9th Cir. 1997), 120 F.3d 196, 200.

¶12. Because of the pendency of this litigation, Shamrock's franchise was never terminated by Ford. Rather, Shamrock continued to operate as an authorized Ford representative for nearly four years. In January, 1997, while the appeal was pending before the Ninth Circuit, Shamrock sold the dealership to Brooks Hanna. That sale was approved by both Lyons as President of Shamrock and Rhoades as a stockholder. Ford approved of the sale and executed an FSSA with Brooks Hanna. As part of the sales transaction, Shamrock resigned as a Ford dealer.

¶13. Following its voluntary resignation as a Ford dealer and its sale of the dealership to Brooks Hanna, Shamrock filed a second petition for judicial review with the Montana Second Judicial District Court. In its petition for review, Shamrock asked that the District Court enter an order that there is "no legitimate cause for termination of the franchise." Ford filed a reply and motion to dismiss contending that, since Shamrock had sold the Ford franchise, Shamrock no longer

had a franchise or contract interest at issue and, thus, it lacked standing and its petition for review was moot.

¶14. The District Court denied Ford's motion to dismiss and held that Shamrock's sale of 80% of its stock without Ford's prior knowledge or approval was not good cause for termination under § 61-4-207(2)(a), MCA. Some three months later, Shamrock filed a separate suit against Ford seeking recovery for damages allegedly caused by Ford's termination of the franchise. Cause No. DV-98-161, Second Judicial District, Silver Bow County.

## Discussion

¶15. 1.  Whether the District Court erred by failing to grant Ford's motion to dismiss Shamrock's petition for judicial review on the grounds of mootness or lack of standing once Shamrock had sold its franchise.

¶16. Although Ford filed a motion to dismiss the petition for judicial review for mootness or lack of standing, the District Court did not directly rule on the motion. Rather, the court addressed the merits of Shamrock's petition for review and concluded:

The final decision of the Motor Vehicle Division of the Department of Justice is, accordingly, REVERSED. Because this finding is dispositive of the Petition for Judicial Review, it does not become necessary to address the particulars of the Motion to Dismiss raised by the Appellee. Having reviewed the record, this Court concludes that the Appellee has failed to advance a persuasive argument justifying the relief requested. Accordingly, the Appellee's Motion to Dismiss is DENIED.

¶17. The District Court erred in not resolving the issue of mootness before addressing the merits of the claim. Mootness is a threshold issue which must be dealt with before addressing the underlying dispute.

Defendants have filed a motion to dismiss this appeal on the ground that no actual controversy now exists between the parties as to the matters involved in said appeal and that all such questions are abstract, hypothetical and moot. This motion must be passed

upon before any consideration of plaintiffs' contentions on the merits can be had.

Adkins v. City of Livingston (1948), 121 Mont. 528, 532, 194 P.2d 238, 240.

¶18. In *Adkins*, the plaintiff had sought to enjoin the City of Livingston from proceeding with the creation of a special improvement district and the levying of assessments against the lands therein. On appeal, this Court noted that, since all the work related to the creation of the special improvement district had been completed, there remained nothing that the courts of Montana could "do by way of forbidding acts already accomplished." *Adkins*, 121 Mont. at 532, 194 P.2d at 240. The issues were thus moot.

¶19. A matter is moot when, due to an event or happening, the issue has ceased to exist and no longer presents an actual controversy. Ruckdaschel v. State Farm (1997), 285 Mont. 395, 396, 948 P.2d 700, 701. A question is moot when the court cannot grant effective relief. Turner v. Mountain Engineering and Const., Inc. (1996), 276 Mont. 55, 59, 915 P.2d 799, 803. If the parties cannot be restored to their original position, the appeal becomes moot. Martin Development Co. v. Keeney Const. Co. (1985), 216 Mont. 212, 219, 703 P.2d 143, 148.

¶20. Shamrock contends that this matter is not moot because it has a separate damage claim pending against Ford and unless this Court upholds the District Court's decision in favor of Shamrock, Ford will be in a position to seek dismissal of the damage claim on the basis that the Motor Vehicle Division's decision is the law of the case. Without expressing any views on the merits of a possible "law of the case" argument in the pending damage suit, we determine that the issue before us must be resolved in light of the fact that the present proceeding originated when Shamrock invoked the protections of Title 61, Chapter 4, Part 2, MCA. In determining whether or not that matter is now moot, we must determine whether, within the confines of that statutory scheme, effective relief can still be granted. Whether effective relief can be granted in the separate damage claim or whether the Motor Vehicle Division's decision becomes "law of the case" are questions not before us and which we do not address.

¶21. This litigation started with Shamrock's petition for relief under § 61-4-205, MCA, which allowed the Motor Vehicle Division to make an initial determination as

to whether there was good cause for Ford to terminate its franchise with Shamrock. The Division determined that there was good cause. Then, during the pendency of the federal court litigation, Shamrock resigned its franchise and sold the dealership to Brooks Hanna approximately one year before it filed its second petition for judicial review in the District Court. Given this turn of events (i.e., Shamrock and Ford no longer had a franchisee/franchisor relationship), Ford rightly questioned whether the District Court could fashion any effective relief under Title 61, Chapter 4, Part 2, MCA. Section 61-4-205(3), MCA, requires that the franchisor give prior notice of intention to terminate a franchise. Section 61-4-206(1), (2), MCA, allows the franchisee to file an objection to the proposed termination, which then triggers a hearing before the Department to determine whether or not good cause exists to terminate. Section 61-4-206(8), MCA, allows any party to the hearing to appeal under the Montana Administrative Procedure Act. However, "[t]he franchise agreement must continue in effect until the adjudication by the department on the verified complaint and the exhaustion of all appellate remedies available to the franchisee." Section 61-4-206(9), MCA. The purpose of the statutory scheme in Title 61, Chapter 4, Part 2, MCA, is to maintain the status quo (i.e., to continue the existence of the franchise agreement) until such time as the franchisee has had prior notice and an opportunity to be heard on the question of good cause. Obviously, when Shamrock chose to sell or assign the franchise during the appellate process, the question of whether Ford had good cause to terminate the franchise in the first instance became academic and thus moot. Given the circumstances of the parties at the time of the appeal to District Court, the District Court was not in a position to restore or maintain the status quo. That is, the court could not maintain or protect Shamrock's status as a franchisee because Shamrock, having sold its franchise to Brooks Hanna, was no longer a franchisee.

¶22. We hold that the District Court erred in not recognizing that, once Shamrock was no longer a franchisee, there was no effective relief under Title 61, Chapter 4, Part 2, MCA, that the court could fashion and, thus, Shamrock's appeal from the Motor Vehicle Division's holding should have been dismissed as moot. Since the question of mootness is dispositive, we need not address the second issue.

¶23. Reversed.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON